JOHNSON v. NEELEY.

Opinion delivered November 18, 1918.

1.  LOGS AND LOGGING—BREACH OF CONTRACT—INSTRUCTION.—Where each party to a contract claimed that the other had broken the contract, and that if he had committed a breach of the contract such breach had been waived by the other, an instruction which properly submitted both theories to the jury was proper.

2.  CONTRACT—SUBSTITUTION—INSTRUCTION.—It was not error to refuse to instruct the jury upon the theory that a new contract had been substituted for the one sued on where there was no evidence tending to prove that fact.

3. CONTRACT—BREACH—DEFENSE.—Where a contract obligated plaintiff to scale and accept pecky and shaky cypress logs, it was error to charge the jury that defendant could not refuse to perform the contract because plaintiff refused to accept such logs if the rejection of the logs was due to mistake or error of judgment unaccompanied · by bad faith or dishonesty, or because plaintiff incorrectly scaled the logs if defendant could have secured a correct scale by the employment of some competent person.

Appeal from Craighead Circuit Court, Jonesboro District; *R. H. Dudley,* Judge; reversed.

STATEMENT OF FACTS.

E. A. Neeley brought this suit against Albert N. Johnson to recover damages by reason of the failure of the defendant to cut and deliver at his mill according to contract the cypress timber off of certain land. The contract which is the basis of this lawsuit is as follows:

"This contract and agreement entered into this the 31st day of July, at Jonesboro, Arkansas, by and between Albert N. Johnson and Louis G. Pavey, partners, and E. A. Neeley, witnesseth:

"The said Johnson and Pavey own all of the standing timber on the following described lands, viz.: The southeast quarter of section 19; the southwest quarter and the west half of the southeast quarter of section 20; all of section 29, except the northwest quarter of the northwest quarter; all of section 31, except the east half of the southeast quarter, containing approximately 2,120 acres; all in township 13 north, range 1 east, in Craighead County, Arkansas, and, being desirous of selling the cypress timber thereon, do sell all of this cypress timber to the said Neeley upon the following terms and conditions, towit:

"The said Johnson and Pavey· agree to deliver to Neeley this cypress timber cut into logs of such lengths as may be directed by Neeley at his mill yards at the station of Chilson, Arkansas, for the sum of $10 per thousand feet, and the said Neeley is to pay for the same every two weeks. If he is unable for business reasons to pay in full for the same then he is to pay for the cutting and log-

ging, the remainder to be paid when the lumber or shin-
gles manufactured from such logs are shipped out; and
to secure the said Johnson and Pavey for such deferred
payments, the said Neeley is to assign invoices and bills
of lading in such amounts as to cover this indebtedness.

"It is also understood and agreed that the said Nee-
ley will accept all cypress logs 10 inches and up, and that
peck and shake will not constitute a defect.

"It is further agreed that the said Johnson and Pa-
vey will use due diligence in furnishing the said Neeley
with enough logs to enable him to successfully operate
his mill for as great a portion of the year as possible,
weather conditions allowing.

"It is further agreed that the said Neeley will assist
the said Johnson and Pavey in making sale and disposi-
tion and the logging of all the timbers on the above named
land and is to receive a salary of $25 a month and in ad-
dition thereto is to receive one-half of the total amount
which the said Johnson and Pavey receive over and above
the amount of $10,000, which they are now asking for all
the timber on all the above mentioned land, after all ex-
penses attached thereto shall have been paid, including a
reasonable compensation for Johnson's services; and also
including 5 per cent. interest on $10,000 from date.

"The said Johnson and Pavey, however, may sell all
of the remaining timber in a bulk if they have the oppor-
tunity and deem it best to do so to other parties, in which
event said Neeley's salary shall cease.

"Executed in duplicate the day and year above writ-
ten."

E. A. Neeley was a witness for himself. According
to his testimony, he and Johnson went over the land on
which the timber was situated before the contract was
executed. Neeley pointed out to Johnson the kind of
timber he wanted for his mill. Neeley went to consider-
able expense in constructing a sawmill for the purpose
of sawing up this timber, and Johnson knew this fact.
Johnson knew also that he contemplated putting in a shin-
gle mill for the purpose of sawing some of the timber into

shingles. Johnson failed to supply Neeley with enough cypress logs to keep his mill in operation. Neeley got tired of shutting his mill down and waiting for Johnson to furnish him the logs. It was then agreed that the parties would suspend the contract until they could go to Memphis and try to sell all the timber on the lands embraced in the contract. The cypress timber belonged to Neeley and the gum timber to Johnson. Neeley was to assist Johnson in the sale of the timber. No sale of timber was made and Johnson failed to furnish sufficient logs to Neeley to keep his mill running. His failure to furnish the logs was due to the fact that he would not pay loggers prices sufficiently high to procure their services. Neeley paid for all the logs furnished him by Johnson. Payment was made at stated intervals, and Johnson accepted the sale of the logs and the inspection made by Neeley and settled with him according to the account rendered by Neeley. Neeley accepted cypress logs that had peck and shake in them as he was required to do by the contract. He only culled out those that were rotten. The testimony of the plaintiff sustained the amount of damages found by the jury. Other witnesses corroborated Neeley's testimony.

Johnson was a witness for himself. According to his testimony, Neeley culled logs that were classed as peck or shake, and for this reason the haulers refused to any longer haul cypress logs to Neeley's mill. Neeley soon grew tired of the contract himself, and it was at his suggestion that they went to Memphis to try to dispose of the timber. Operations were suspended under the contract during the few weeks they were trying to sell the timber. The failure of Johnson to furnish sufficient logs for the operation of the mill at full capacity was due to the fact that Neeley refused to receive logs that were classed as peck or shake under the contract and also failed to correctly scale the logs which were hauled to his mill under the contract.

The jury returned a verdict in favor of the plaintiff for $2,500, and from the judgment rendered the defendant has appealed.

*Horace Sloan* and *Basil Baker*, for appellant.

1. The motion to make more definite should have been sustained. The pleading set forth conclusions, not the facts. 67 Ark. 15; 69 *Id.* 209; 77 *Id.* 1; *Ib.* 357.

2. The court erred in giving instruction No. 2 and in refusing No. 6. If by new agreements the terms of a written contract are changed and then acted on the rights and liabilities will be defined in accordance with the new terms. It was at least a question for the jury. 112 Ark. 165; 112 *Id.* 223.

3. It was error to give No. 4 asked by plaintiff and to refuse No. 1 asked by defendant. The court assumed certain facts as true and others as untrue. This was an invasion of the province of the jury. 77 Ark. 201; 93 *Id.* 564, 573; 128 *Id.* 536.

4. There are other errors in giving and refusing instructions. Neeley's scaling was incorrect and unfair and defendant was unable on account of unfair scaling to procure the necessary labor and was hindered in performance of the contract and he was not liable. 128 Ark. 536; 65 *Id.* 320; 93 *Id.* 472. Neeley breached the contract and the burden was on him to show performance. 88 Ark. 422, 430. See also 102 Ark. 79-83; 2 Black on Rescission & Cancellation, p. 1398, § 606.

*Lamb & Frierson,* for appellee.

1. The motion to require plaintiff to plead more specifically was properly overruled.

2. The court did not err in giving instruction No. 2. No change was made in the contract.

3. The court did not err in giving No. 5. There was no change nor modification in the contract, nor in giving No. 4. Appellant breached the contract. In fact, there is no error in giving or refusing instructions. 94 Ark. 158; 44 *Id.* 349; 46 *Id.* 217; 98 *Id.* 269; 100 *Id.* 251; 122 *Id.* 212; 114 *Id.* 559; 87 *Id.* 52.

4. The verdict is not excessive.

HART, J., (after stating the facts). It is earnestly insisted by counsel for the defendant that the court erred in giving instruction No. 2 as requested by the plaintiff and in refusing to give instruction No. 6 requested by the defendant. Instruction No. 2 reads as follows:

"2. Under the contract the defendant agreed to use all diligence in furnishing the plaintiff with enough logs to enable him to successfully operate his mill for as great a portion of the year as possible, weather conditions permitting. If you find from a preponderance of the evidence that the defendant did not use all diligence in furnishing enough logs to enable Neeley to successfully operate his mill for a great portion of the year as possible, under the weather conditions prevailing in that locality from July 31, 1917, up to the commencement of this suit, January 2, 1918; and that such failure to use all diligence in furnishing said logs caused damage to the plaintiff in the manner set out in other instructions, then your verdict will be for the plaintiff for the amount of such damage; unless you further find from a preponderance of the evidence that the plaintiff himself substantially breached the contract in such manner as to release the defendant from performance, or find such damage due to plaintiff's own default in performance of the contract, or find that the plaintiff himself waived the default of defendant in performing the contract, if you find any such default."

Instruction No. 6 reads as follows:

"6. If you find from the evidence that the contract sued on was changed by the parties in any substantial manner in its performance, and that thereafter plaintiff continued to accept logs from the defendant, and the defendant to deliver same not in accordance with the written contract but according to such substantial changes, then neither party was bound by the contract sued on, and you will find for the defendant."

We do not think these assignments of error well taken. Each party claimed that the other had breached the contract, and each also claimed that, if he had in any

way breached the contract, such breach had been waived by the other party. Evidence was adduced by the plaintiff tending to show that the weather conditions were such after the execution of the contract up to the commencement of the suit that the defendant could have hauled the logs to his mill in compliance with its terms. On the other hand, according to the testimony of the defendant, the ground was so wet for a part of the time that he could not haul the logs. The respective theories of the parties to the lawsuit were submitted to the jury in instruction No. 2.

The court properly refused to give instruction No. 6. There was no testimony upon which to base it. The testimony does not show that the contract sued on was ever changed by the parties and a new one substituted therefor. The testimony goes no further than to show that the parties contemplated terminating it by selling the timber on the land to other parties and that operation under the contract was suspended for a few weeks while they were trying to sell the timber to other parties. No sale of the timber, however, was made, and no new contract was entered into between the parties.

It is also contended that the court erred in giving instruction No. 6 at the request of the plaintiff. The instruction reads as follows:

"6. Under the terms of the contract, pecky and shaky logs did not constitute defective logs, and the plaintiff would not be justified in rejecting such logs, but you are instructed that mere errors due to mistakes or inadvertence, or mere errors of judgment upon the part of Neeley not due to bad faith or dishonesty which resulted in a departure from the terms of the contract, not substantial, but only slightly, would not necessarily constitute such a breach of the contract as would justify defendant Johnson in failing or refusing to further perform the contract on his part; and in this case if you find that Neeley did reject certain logs as defective, which under the terms of the contract should have been taken, but further find that this was due to mistake or error of judgment,

unaccompanied by bad faith or dishonesty; and you further find that satisfactory and correct scale and inspection could have been had by reasonable effort on the part of defendant or by the employment by him of some competent person, then the rejection of such logs, or difference, or departure from the terms of the contract on scale and inspection by Neeley, if any, would not justify Johnson in failing or refusing to perform the contract on his part, if you find there was such failure and refusal.''

We agree with counsel for the defendant with respect to this instruction. In the latter part of the instruction the jury was told that if it should find for Neeley or reject certain logs as defective, which under the terms of the contract should have been taken, but should further find that this was due to mistake or error of judgment, unaccompanied by bad faith or dishonesty; and it should further find that satisfactory and correct scale and inspection could have been had by reasonable effort on the part of the defendant, or by the employment by him of some competent person, then the rejection of such logs, or the departure from the terms of the contract on scale and inspection by Neeley, would not justify Johnson in refusing to perform the contract on his part. This is not the law. Under the terms of the contract no duty devolved on Johnson to use reasonable efforts to see that Neeley complied with the contract on his part. That duty devolved upon Neeley. Nor did the contract require Johnson to employ some competent person to scale and inspect the logs in order to keep Neeley from violating the contract on his part. No duty was cast upon Johnson by the contract to pay the expense of inspecting and scaling the logs for Neeley.

It follows that the court erred in giving this instruction to the jury, and that such error was prejudicial to the rights of the defendant, for the verdict of the jury might have been based upon the finding by it that Johnson failed to employ a competent person to scale and inspect the logs at the mill for Neeley.

For the error in giving this instruction, the judgment must be reversed, and the cause remanded for a new trial.